FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2004 AUG 23  AM 10: 50

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SHIRLEY KEMP, et al. | * | CIVIL ACTION |
| versus | * | NUMBER: 00-3513<br>c/w NUMBER: 00-3753 |
| METABOLIFE INTERNATIONAL, INC., et al. | * | |
| *   *   *   *   *   *   *   * | * | JUDGE HELEN BERRIGAN<br>MAG. JUDGE CHASEZ |

**METABOLIFE'S REPLY TO PLAINTIFFS' OPPOSITION TO
MOTIONS FOR SUMMARY JUDGMENT REGARDING
CARLY A. CINQUEMANO, NARVELLE COURTNEY,
AND BEVERLY COURTNEY**

**MAY IT PLEASE THE COURT:**

Before the Court are three motions for summary judgment filed by Metabolife International,

Inc. and Mike Ellis (collectively "Metabolife"). These motions seek dismissal of three Plaintiffs,

Carly A. Cinquemano, Beverly Courtney, and Narvelle Courtney, based on the lack of any expert

medical evidence that Metabolife 356® caused their specific injuries.

The present motions are similar in many respects to the earlier motions for summary

judgment the Court granted in connection with Plaintiffs Vera Brooks, David Brewer and Alicia

Fee
Process
X   Dktd
CtRmDep
Doc. No. 629

Price.[1]  Here, as before, Metabolife concedes, for purposes of this motion only, general causation, and points to an absence of expert medical testimony that Metabolife 356 caused Plaintiffs' particular injuries in this case – that is, an absence of medical testimony establishing specific causation.

In opposition to the motions, *none of the Plaintiffs offer any expert medical testimony* relating their specific injuries to their use of Metabolife 356.  This lack of expert medical testimony is fatal to their attempts to establish a genuine issue of material fact for trial, and indeed, is dispositive of these motions.

Instead, in their Oppositions, Plaintiffs insist that expert medical testimony is not necessary to establish a genuine issue of material fact as to specific causation.  Instead of medical testimony, Plaintiffs offer only their own declarations, and, in some cases, medical records and/or the testimony of *general* causation experts that the product can cause, in the general population, the conditions of which Plaintiffs complain.

Plaintiffs continue to claim that this evidence is sufficient despite the fact that similar evidence was rejected by the Court in the previous motions.  Thus, this Court has already found that Plaintiffs' own affidavits, while sufficient to establish a genuine issue as to whether Plaintiffs suffered actual harm, are *not* sufficient to establish a genuine issue of material fact as to specific causation.  See *e.g.,* Rec. Doc. 393, p. 7.  Further, this Court has already rejected reliance on testimony of Plaintiffs' *general* causation experts as establishing a genuine issue of material fact with respect to *specific* causation. As the Court observed in connection with a similar claim in the earlier Brewer summary judgment, such testimony "would serve only to negate an assertion made by

---

[1]  See Judgment granting summary judgment, 10/7/03; Rec. Doc. 393.

Defendants that Metabolife 356 cannot be shown to cause harm in the general population – an issue of general causation, not specific causation." Rec. Doc. 393, p. 6.

Thus, for the most part, the Court has already considered evidence and arguments similar to those asserted by Plaintiffs here – and rejected them as insufficient to create a genuine issue of material fact as to specific causation. In this case, however, Plaintiffs add a new twist. Plaintiffs claim that because their declarations establish that they did not suffer from the symptoms complained of before taking Metabolife 356, and that their symptoms appeared after taking Metabolife 356, they are entitled to a presumption that Metabolife 356 caused their injuries under *Housley v. Cerise* and *Dabog v. Deris, infra.* For a variety of reasons, Plaintiffs are wrong about the presumption.

It is questionable whether the presumption is applicable to litigation of this type – which involves ingestion of, or exposure to, a substance, as opposed to a traumatic incident or "accident." Further, even if it is available in cases of this type, the presumption does not eliminate Plaintiffs' burden to come forward with medical testimony linking their particular injuries to their use of Metabolife 356. None of the Plaintiffs have offered any such medical testimony, and, quite simply, Plaintiffs therefore are not entitled to invoke the presumption.

This Memorandum first addresses the arguments applicable to all three of the Plaintiffs, then addresses the more specific arguments asserted by each individual Plaintiff. Ultimately, as set forth in its original memoranda in support of these motions, and as shown below, Plaintiffs' oppositions fail to raise any genuine issues of material fact. Metabolife's motions for summary judgment regarding Carly A. Cinquemano, Beverly Courtney, and Narvelle Courtney should be granted.

-3-

I.     **Plaintiffs' Claims that Medical Testimony of Causation Is Unnecessary and/or Any Suggestion that the *Housley* Presumption Eliminates the Need for Such Medical Evidence Must Be Rejected.**

   A.     **Plaintiffs' Failure to Offer Medical Testimony As to Specific Causation Compels Entry of Summary Judgment.**

In a personal injury suit under Louisiana law, plaintiff bears the burden of proving a causal relationship between the injury sustained and the accident which caused the injury. As this Court recognized in its October 7, 2003 Order granting summary judgment as to Vera Brooks, David Brewer, and Alicia Price, "[t]he test for determining the causal relationship between the accident and the subsequent injury is whether the plaintiff proved through *medical testimony* that it is more probable than not that the subsequent injuries were caused by the accident." Rec. Doc. 393, 10/7/03, citing *Moranto v. Goodyear Tire & Rubber Co.,* 94-2603 (Louisiana. 2/20/95), 650 So.2d 757, 759; emphasis supplied.

Plaintiffs reluctantly concede that the "cases cited by Metabolife contain *dicta* to the effect that medical testimony may be necessary on causation," but, Plaintiffs continue, "not one of the cited cases would hold that a doctor, who is not an expert on Ephedra and caffeine combinations must give specific causation."[2] *Moranto* makes clear that the requirement of medical evidence is not *dicta,* but Metabolife *does* agree that any treating physician, who, as Plaintiffs hypothesize, "may be unfamiliar with Metabolife 356 or its components, or who may not even be aware a patient has taken Metabolife,"[3] is not competent to offer an opinion on specific causation.

---

[2] See *e.g.,* Cinquemano Opposition, p. 4; Plaintiffs assert this argument in all four of the Oppositions filed.

[3] See *id.,* note 2.

The point is not that the *treating physician* must offer a specific causation opinion.  Rather, to defeat summary judgment, Plaintiffs must provide expert medical testimony, from a medical expert qualified to opine on the topic, linking the specific injuries suffered by the Plaintiff to his or her use of Metabolife 356.  Plaintiffs' failure to produce any evidence from a qualified physician that Metabolife 356 caused the specific injuries they suffered in this case is fatal to their attempt to defeat summary judgment here.

Plaintiffs seem to argue, however, that because their *treating physicians* are not qualified or otherwise able to opine as to specific causation, Plaintiffs themselves should be permitted to do so.  To that end, each of the Plaintiffs has offered a nearly identical declaration, all of which state that prior to taking Metabolife 356, they did not suffer from the conditions of which they now complain and that the "only time" they experienced those symptoms was after taking the product.

Plaintiffs, however, are not competent to opine as to causation and their declarations are not competent evidence as to that issue.  The Louisiana Supreme Court has held that when the conclusion regarding medical causation is not one "within common knowledge, expert medical testimony is required to prove causation." *Pfiffner v. Correa,* 643 So.2d 1228, 1234-35 (Louisiana. 1994); see also *Lasseigne v. Taco Bell Corp.,* 202 F.Supp.2d 512, 524 (E.D. Louisiana. 2002)("It is not disputed that the causes of impotency, migraine headaches and PTSD [post traumatic stress disorder] are not matters within the common knowledge of a layperson.  Accordingly, plaintiff must present admissible expert testimony regarding causation to meet his burden ....").

None of the Plaintiffs are physicians or otherwise claim expertise in the health sciences. Moreover, Plaintiffs do not allege that the cause of their various ailments is within the common

knowledge of a lay person. Accordingly, Plaintiffs must offer expert medical testimony relating their specific injuries to their consumption of Metabolife 356.

This Court has previously held that this type of lay opinion testimony at best creates a genuine issue of material fact as to whether the Plaintiffs suffered actual harm, but it does not create a genuine issue of material fact as to whether ingestion of Metabolife 356 caused the various ailments of which Plaintiffs complain. See *e.g.* Rec. Doc. 393 at 7. Thus, Plaintiffs' reliance on their own declarations to establish a genuine issue of material fact as to specific causation is wholly misplaced and insufficient to defeat Metabolife's motions for summary judgment.

**B.      Plaintiffs Are Not Entitled to the Benefit of the So-Called *Housley* Presumption**

Plaintiffs also suggest that they are entitled to a presumption of causation that shifts the burden of proof to Metabolife. In *Housley v. Cerise,* the Louisiana Supreme Court held as follows:

> A claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of a causal connection between the accident and the disabling condition.

*Housley v. Cerise,* 570 So.2d 973, 980 (Louisiana. 1991); see also *Dabog v. Derise,* 625 So.2d 492 (Louisiana. 1993).[4]  Where a plaintiff can demonstrate that all of the required elements are met, the

---

[4] Merely stating the elements suggests some of the difficulties in applying the presumption to a case such as this, which involves ingestion of a substance – as opposed to a traumatic event or "accident," such as the fall down the stairs in *Housley,* or the automobile accident in *Dabog.* Plaintiffs cite no cases in which the presumption was applied when the "accident" was ingestion of a substance, and Plaintiffs offer no comment as to this distinction. Similarly, permitting the burden of proof to be shifted on a mere showing of a temporal proximity between ingestion of the substance and the onset of disabling symptoms, appears incongruous with the law governing proof of causation in cases such as this. The general rule is that mere evidence of a temporal relationship between ingestion of, or exposure to, a substance and the onset of symptoms is insufficient proof of causation. See *e.g. Moore v. Ashland Chemical Inc.,* 151 F.3d 269, 278 (5th Cir. 1998)(Texas law)(rejecting under *Daubert* expert testimony that relies "substantially on the temporal proximity between exposure and symptoms.").

presumption operates to shift the burden of proof to the defendant. To rebut the presumption, the defendant must then come forward with evidence to show that some other particular incident could have caused the injury. *Moranto,* 650 So.2d at 761; *Davis v. Galilee Baptist Church,* 486 So.2d 1021 (Louisiana. App. 2 Cir. 1986) The defendant is not required to establish that some other accident actually *did* cause the injury, but only that some other particular accident *could* have caused the injury. *Simon v. United States of America,* 51 F.Supp. 2d 739, 746 (W.D. Louisiana. 1999).

Plaintiffs contend that under *Housley,* their "burden is to show that prior to taking Metabolife 356 they lacked symptoms associated with taking 356, [and] after taking Metabolife they developed symptoms consistent with those caused by 356." See *e.g.,* Cinquemano Opposition, p. 5. This is an oversimplification of the law. Plaintiffs neglect to mention the final requirement for the *Housley* presumption to apply – that "the medical evidence shows there to be a reasonable possibility of a causal connection between the accident and the disabling condition." Plaintiffs offer no medical evidence in this case that shows a causal link between their particular injuries and the use of Metabolife 356, and, because they do not, Plaintiffs are not entitled to the presumption.

Though for purposes of this motion Metabolife assumes that general causation can be established, this does not alleviate Plaintiffs' burden to introduce medical testimony sufficient to establish the specific causation component of their claim. As this Court has held, however, "proof of causation has two components, general and specific. General causation deals with whether the substance at issue can cause diseases or disorders in people in general. Specific causation focuses upon whether the substance was in fact the cause of the ailments or symptoms in the particular patient. An inability to establish specific causation is fatal to Plaintiff's claim." Rec. Doc. 393, at

-7-

4, *citing Pick v. American Medical Systems, Inc.,* 958 F.Supp. 1151, 1163-1164 (E.D. Louisiana. 1997).

In most cases, the general and specific components of causation are so intertwined that the same medical experts are offered to establish both components of the claim – that the accident *could* cause this type of injury and that there is a reasonable possibility that the accident, in fact, caused the particular injury to the particular plaintiff. Where, as here, proof of the two components of causation is divided, Plaintiffs retain the burden of coming forward with medical testimony that will establish at least a reasonable possibility that "the substance was, in fact, the cause of the ailments or symptoms in the *particular* patient." *Id.,* Rec. Doc. 393.

Moreover, Plaintiffs' evidence must be sufficient at least to tip scales. The presumption does not apply "if the evidence leaves the probabilities of causation evenly balanced." *Dodge v. S&B Logging,* 03-1355 (Louisiana. App. 3 Cir. 3/3/04), 867 So.2d 105, 107, *citing Courville v. Premier Abrasive Products, Inc.,* 01-840 (Louisiana. App. 3 Cir. 12/12/01), 801 So.2d 598, 601. In such an event, the plaintiff "has not met her burden of proof." *Dodge, id.*

Further, Plaintiffs' statement of the level of proof necessary for them to invoke *Housley* glosses over an additional requirement necessary to invoke the presumption – the temporal relationship between the "accident" and the resulting injury. The law is clear that the presumption applies only if there is a *close* temporal relationship between the accident and the injury. In *Whiteman v. Worley,* 96-0305 (Louisiana. App. 4 Cir. 3/14/97), 688 So.2d 207, 211, the court discussed this requirement, explaining: "the symptoms must commence 'with' the accident," and noting that in "*Housley* itself the symptoms began immediately after the accident, and there was a diagnosis several hours later." *Whiteman, id.;* internal quotations and footnotes omitted.

-8-

Noting that it is the existence of a "close temporal relationship" that authorizes invocation of the presumption, and that it is the presumption that "provides the balance of the proof of causation," the *Whiteman* court refused to apply the presumption where the symptoms did not commence until ten days after the accident. The court concluded: "Thus, the present case has much less of the "close temporal relationship," between the accident and symptoms than was present in *Housley* and is suggested by the reference to "commencing with the accident." *Id., citing Housley,* 579 So.2d at 980.

With these general principles in mind, Metabolife turns to a more specific discussion of the claims of the three individual Plaintiffs. As shown below, the individual Plaintiffs have failed to present any medical testimony on the issue of specific causation. This failure, and others, renders the *Housley* presumption inapplicable and is fatal to their attempts to defeat summary judgment.

## II.   Plaintiffs' Transversments of Facts and/or Attached "Evidence" Do Not Create Genuine Issues of Material Facts on the Issue of Specific Causation.

### A.   Carly A. Cinquemano Has Failed to Come Forward With Medical Evidence of Specific Causation and The Medical Records She Attaches Establish Other Equally Possible Causes for Her Cardiac Complaints.

Plaintiff Carly A. Cinquemano claims that she suffered heart damage, heart attack or heart attack like symptoms, chest pains, anxiety, depression, dizziness, diarrhea, and headaches as a result of her ingestion of Metabolife 356. In her transversment of uncontested facts offered by Metabolife, Ms. Cinquemano admits the following facts pertinent to her claim: (1) she purchased one bottle of Metabolife 356 in May, 1999; (2) she consumed two caplets a day for one month; (3) she suffered chest pains which lasted for one hour and anxiety and stress as a result of consuming Metabolife 356;

and (4) on June 9, 1999, she was treated at East Jefferson Hospital for chest pains and tightness in her chest, which she claims resulted from consumption of Metabolife 356.

For Ms. Cinquemano to establish that there is a genuine issue of material fact regarding the specific cause of her various complaints, she must come forward with medical testimony that – more probably than not – the specific cause of these ailments was the use of Metabolife 356. Alternatively, to invoke *Housley,* Plaintiff must establish through medical testimony a reasonable possibility that her various complaints were caused by Metabolife 356.

In her Opposition to Metabolife's motion, however, *Ms. Cinquemano does not offer any expert medical testimony* linking her various symptoms to the consumption of Metabolife 356. Instead, she relies on (1) her own declaration and (2) medical records from East Jefferson General Hospital relating to treatment for the chest pains she experienced on June 9, 1999.[5]

Ms. Cinquemano is not a doctor and claims no expertise in the health sciences. As such, she is not competent to diagnose her various conditions or to establish causation with respect thereto. In her Answers to Interrogatories, Ms. Cinquemano claimed to have suffered "heart damage" and in her Declaration, she claims that she suffered a "heart attack" or "heart attack like symptoms" as a result of taking Metabolife 356.[6]

The actual medical records attached to her Opposition, however, contain no indication of either heart damage or a heart attack. The EKG and all other heart monitoring tests were within the normal range, and it appears that the conclusion reached by the physicians at East Jefferson is that

---

[5] See Plaintiff's Transversment of Metabolife Uncontested Fact No. 10; see also Cinquemano Opposition, p. 3 ("The defendant simply cannot prove an absence of evidence. We have the declaration of Ms. Cinquemano and the medical records showing the only product Ms. Cinquemano was taking at the time of her injury was Metabolife.").

[6] See Metabolife Uncontested Facts, Nos. 1(b) and Plaintiffs' declaration, quoted at page 2 of her Opposition.

she did not have a cardiac incident – thus demonstrating the wisdom of the rule that when the conclusion regarding medical causation is not one "within common knowledge, expert medical testimony is required to prove causation." *Pfiffner v. Correa,* 643 So.2d at 1234-35.

Though Plaintiff may have sincerely "believed" she was having a heart attack,[7] and that Metabolife 356 was the source of this and other alleged injuries, Ms. Cinquemano is not, and does not claim to be, a person competent to opine about the medical cause of her chest pains, heart damage, heart attack or heart attack like symptoms, chest pains, anxiety, depression, dizziness, diarrhea, and headaches. Thus, as the Court found in connection with the Declaration submitted by Alicia Price in the earlier summary judgment motions, "her opinion, let alone her belief, that Metabolife 356 caused her injuries is insufficient to withstand summary judgment." Rec. Doc. 393, p. 8. Absent expert medical testimony linking Ms. Cinquemano's symptoms to her ingestion of Metabolife 356, Ms. Cinquemano fails to establish a genuine issue of material fact as to specific causation. The lack of expert medical testimony similarly defeats Plaintiff's attempt to invoke the *Housley* presumption.

Plaintiffs also assert that "Ms. Cinquemano's medical records showing that Metabolife 356 is the only drug she ingested before having chest pains would preclude summary judgment." Cinquemano Opposition, p. 5. But this argument assumes, without supporting proof, that the only possible cause of Ms. Cinquemano's chest pains and related symptoms is ingestion of a substance – here Metabolife 356. Plainly that is not correct. Metabolife's general causation experts established that there are numerous risk factors for heart conditions, and review of Ms. Cinquemano's medical records reveals that she suffered from several of them.

---

[7] Cinquemano Opposition, p. 5.

Ms. Cinquemano's medical records report a "positive family history" for high blood pressure, and Ms. Cinquemano admits to smoking half a pack of cigarettes a day.  As established in Metabolife's *Daubert* motion, hypertension and smoking are known risk factors for heart conditions.[8]  Further, the medical records reveal that Ms. Cinquemano admits to having a personal history of "panic attacks," and the medical records also establish that "emotional stress" can cause chest pains and thus mimic the symptoms of which she complained.

Indeed, in addition to emotional stress, the medical records suggest other equally possible causes for her symptoms:

> *We did not find any specific reason for your chest pain.  It does not seem to be related to any serious heart or lung disease.*  It may be from emotional stress.  A viral inflammation in the chest wall may also cause chest pain.  So will minor injury or an upset stomach.

Cinquemano Opposition, Ex. B, Discharge Instructions; emphasis supplied.

Moreover, even if Ms. Cinquemano's medical records were somehow deemed an acceptable substitute for expert medical testimony as to causation, the records establish that the *Housley* presumption is not available to the Plaintiff here for other reasons as well.  In light of Plaintiff's history of panic attacks and the other risk factors described above, Plaintiff's medical records do not demonstrate that ingestion of Metabolife 356 is any more likely to have caused her symptoms than the other possible causes – emotional stress, viral inflammation, minor injury or upset stomach – described above.  "[I]f the evidence leaves the probabilities of causation evenly balanced," the presumption does not apply and plaintiff "has failed to carry her burden of proof." *Dodge v. S&B*

---

[8] See *e.g.*, Metabolife's *Daubert* motion at page 21 (noting hypertension (high blood pressure) and smoking among the risk factors for cardiovascular events, citing Olney, A5, ¶ 42; Gershwin, A2, pp. 4-8, and observing that "[b]ecause these factors can independently cause the adverse events of which Plaintiffs complain, any causation analysis must account for these factors.").

*Logging*, 03-1355 (Louisiana. App. 3 Cir. 3/3/04), 867 So.2d 105, 107, *citing Courville v. Premier Abrasive Products, Inc.,* 01-840 (Louisiana. App. 3 Cir. 12/12/01), 801 So.2d 598, 601. That is the situation here.

Further, even if the *Housley* presumption were somehow applicable, the presumption can be rebutted by a showing that some other particular incident could have caused the injury. *Moranto,* 650 So.2d at 761; *Davis,* 486 So.2d 1021. In this regard, the defendant is not required to establish that some other accident actually *did* cause the injury, but only that some other particular accident *could* have caused the injury. *Simon,* 51 F.Supp. 2d at 746. The medical records themselves establish that incidents other than consumption of Metabolife 356 *could* have caused Plaintiff's chest pains in this case. Thus, the same evidence that leaves the probabilities equally balanced and thereby defeats application of the presumption, also demonstrates that other particular incidents *could* have caused the injury and thereby rebuts the presumption.

Finally, the evidence offered by the Plaintiff is not sufficient to establish the "close temporal proximity" between Ms. Cinquemano's ingestion of Metabolife 356 and the onset of her symptoms required by *Housley* and its progeny. Plaintiffs argue that "Ms. Cinquemano's claims show her ingesting Metabolife then going to the emergency room." Opposition at p. 8. But the evidence does not support the claim of an immediate onset of symptoms. Though her claims vary as to the dates she purchased Metabolife 356 and the length of time she took it,[9] none of the evidence establishes

---

[9] Ms. Cinquemano claims in her declaration that she bought Metabolife 356 in April 1999 and consumed it for approximately two months, taking two pills, two times a day. In Supplemental Answers to Interrogatories, she claims to have purchased it in May 1999 and to have consumed it for one month. See Metabolife Uncontested Facts, Nos. 1(a) and 1(c). Either way, however, Ms. Cinquemano did not seek treatment until June 9, 1999, at least one month – and possibly as long as two months – after she began taking the product. Contrary to her claims, the onset of symptoms was not immediate – thus Plaintiff fails to establish the close temporal proximity between ingestion of the product of the onset of symptoms required to invoke *Housley.*

-13-

that her symptoms were immediate. Thus, the close temporal proximity required by *Housley* is absent as well.

Lacking expert medical evidence linking the particular symptoms she suffered to Metabolife 356, and/or medical evidence eliminating the other possible causes of Ms. Cinquemano's chest pains and other ailments, Ms. Cinquemano cannot establish an entitlement to the *Housley* presumption or otherwise create a genuine issue of material fact sufficient to defeat summary judgment here. For this reason, and the others discussed above, Metabolife's motion for summary judgment should be granted as to Carly A. Cinquemano.

**B.      Beverly Courtney Has Failed to Come Forward With Medical Evidence of Specific Causation and Her Long History of Prior Seizures Negates Any Claim that She Was In Good Health Before She Ingested Metabolife 356.**

Plaintiff Beverly Courtney claims that she suffered seizures as a result of her consumption of Metabolife 356. In her transversment of uncontested facts offered by Metabolife, Ms. Courtney admits the following facts pertinent to her claim: (1) she or her mother purchased Metabolife 356 in the summer of 1996; (2) she consumed one to three caplets per day, finishing the entire bottle; (3) she was treated at Southwest Mississippi Regional Medical Center (Mississippi Regional) on September 6, 1996, for complaints of seizure; and (4) she was treated at Field Memorial Hospital in 1997 for complaints of seizure. Plaintiff further admits that in 1996 she reported to Dr. Robert Cockern at Mississippi Regional that she "had a history of recurrent episodes of this type over the past several years," but with the caveat that "all seizures occurred after taking diet medication."[10]

For Ms. Courtney to establish a genuine issue of material fact regarding the specific cause of her claim that Metabolife 356 caused her to suffer seizures, she must come forward with medical

---

[10] See B. Courtney's response to Metabolife's Uncontested Material Fact No. 1(d) and her declaration, quoted at pp.1-2.

testimony that – more probably than not – the specific cause of these events was the use of Metabolife 356. Alternatively, to invoke *Housley,* Plaintiff must establish through competent medical evidence a reasonable possibility that her seizures were caused by the product.

In Opposition to Metabolife's motion, *Ms. Courtney does not offer any expert medical testimony* linking her seizures to the consumption of Metabolife 356. Instead, she relies on (1) her own declaration and (2) an affidavit submitted by Dr. Richard Gold in opposition to a summary motion directed to Kasey McMillian, another Plaintiff in this case.[11] See Plaintiff's Transversment of Metabolife Uncontested Fact No. 10. Plaintiff claims that this evidence is sufficient to invoke *Housley* and/or that it is sufficient to defeat summary judgment. These assertions are incorrect as a matter of law.

Plaintiff's reliance on the testimony of Dr. Gold is wholly misplaced. Dr. Gold was the treating physician for Kasey McMillian, another Plaintiff who complained of seizures as a result of using Metabolife 356. After review of the available information, including medical records, relating to Ms. McMillian, Dr. Gold opined "that the physical effects claimed by [Ms. Millian] are definitely consistent with consumption of Metabolife 356." Plaintiff claims – without supporting evidence or attachment of medical records – that "Ms. Courtney's symptoms of seizure are exactly like Ms. McMillian's symptoms and as such, Metabolife's [*sic*] burden of proof in this motion has been met." B. Courtney Opposition, p. 3.

Plaintiffs are again confusing general causation and specific causation. For purposes of this motion only, Metabolife assumes – even without Dr. Gold's testimony – that Plaintiffs can establish

---

[11] Dr. Gold's affidavit was attached to McMillian's summary judgment opposition as Ex. B. The entire affidavit is quoted at pages 2-3 of Ms. Courtney's Opposition.

general causation – that is, Metabolife 356 *can* cause seizures in the general population. The question is whether Plaintiff has submitted sufficient evidence to survive summary judgment as to whether Metabolife caused *Ms. Courtney's* seizures in this particular case. Ms. Courtney makes no claim that Dr. Gold examined *her* medical records, but nevertheless argues that Dr. Gold's testimony with respect to Ms. McMillian is sufficient. However, Dr. Gold's testimony as it relates to *Kacey McMillian's* seizures, or seizures in general, does nothing to advance *Ms. Courtney's* burden of proof on specific causation. The Court's comments with respect to similar claims asserted in the earlier Brooks, Price and Brewer summary judgments are equally apt here. Dr. Gold's testimony:

> ... would serve only to negate an assertion made by Defendants that Metabolife 356 cannot be shown to cause harm in the general population – an issue of general causation, not specific causation. It cannot negate the assertion Defendants in this case have made that Metabolife 356 did not cause this harm in these particular Plaintiffs.

Rec. Doc. 393 at 5-6. Thus the evidence offered by Plaintiffs is not sufficient either to establish a genuine issue of material fact as to specific causation or to invoke *Housley*.

In addition to the fact that Ms. Courtney has failed to provide the necessary medical evidence, the *Housley* presumption is unavailing here for several other reasons as well. The most obvious of these is Ms. Courtney's admitted long history of seizures – seizures that occurred at least "several years" – and possibly for as long as twenty years[12] – *before* her use of Metabolife 356. Ms. Courtney's long history of seizures establishes that Ms. Courtney was not in "good health" before

---

[12] In her transversment of Metabolife's Uncontested Fact No. 1(d), Plaintiff admits that she reported "recurrent episodes" of seizures for at least "several years" prior to her 1996 treatment at Mississippi Regional (with the caveat discussed above). Plaintiff, however, simply did not respond to Metabolife's Uncontested Fact No. 1(e) – specifically that "Plaintiff's medical records from Field Memorial Hospital, dated September 2, 1997, contain a self-reported history of seizure disorder dating from 1977." Thus, this fact should be deemed admitted. But whether Ms. Courtney suffered a 20 year history of seizures, or only "several years" of seizures, the fact is that Ms. Courtney suffered from recurrent seizures before she ever took her first Metabolife 356 caplet.

-16-

the "accident," and in fact previously suffered from the very condition that she alleges Metabolife 356 caused. Proof that a Plaintiff was in "good health" before the "accident" is required for the presumption to apply.

Further, as discussed above in connection with Ms. Cinquemano's evidence, the *Housley* presumption does not apply "if the evidence leaves the probabilities of causation evenly balanced." *Dodge,* 867 So.2d at 107. Although Plaintiffs seem to be of the view that their caveat – that all seizures occurred while Ms. Courtney was using "diet medication" – is somehow sufficient to eliminate concerns that something other than Metabolife 356 caused her seizures, they are mistaken. Plaintiff relies on the constituent ingredients of Metabolife 356 – specifically, ephedra and caffeine – as establishing the biological mechanism of causation. Plaintiff does not identify the other diet medication Plaintiff took, and thus there is no way to determine whether they were composed of the same active ingredients as Metabolife 356. Thus, there is no evidence to support Plaintiffs' apparent assumption that all seizures resulting from diet medications were caused by the same biological mechanism. Indeed, in the absence of evidence that the other diet medications were composed of the same active ingredients, the more logical assumption is that something *other than* diet medications is the cause of Ms. Courtney's long history of seizure disorder.

Ms. Courtney has failed to come forward with expert medical evidence linking the particular seizures she suffered to her consumption of Metabolife 356 and/or any credible medical evidence distinguishing her prior seizures from those allegedly caused by Metabolife 356. Ms. Beverly Courtney has not established an entitlement to the *Housley* presumption or otherwise created a genuine issue of material fact sufficient to defeat summary judgment here. For this reason, and the

-17-

others discussed above, Metabolife's motion for summary judgment should be granted as to Beverly Courtney.

## C.    Narvelle Courtney Has Failed to Come Forward With Medical Evidence of Specific Causation and Summary Judgment Should Be Granted.

Plaintiff Narvelle Courtney claims that she suffered irregular heartbeat, thyroid trouble and high blood pressure as a result of taking Metabolife 356. Ms. Courtney admits the following uncontested facts pertinent to her claim, specifically that: (1) she purchased Metabolife sometime about three years before 2002; (2) she consumed two to three tablets a day for an unknown period of time; and (3) she consulted Dr. David Harrison about these symptoms. Ms. Courtney's declaration states more specifically that she bought the product in 1997.

In order for Ms. Narvelle Courtney to establish that there is a genuine issue of material fact regarding the specific cause of her complaints she must come forward with medical testimony that – more probably than not – the specific cause of these events was the use of Metabolife 356. Alternatively, in order to invoke *Housley,* Plaintiff must establish through medical testimony a reasonable possibility that her various complaint were caused by Metabolife 356.

In Opposition to Metabolife's motion, *Ms. Narvelle Courtney does not offer any expert medical testimony* specifically linking her symptoms to the consumption of Metabolife 356. Instead, Ms. Courtney relies on (1) her own declaration and (2) on the issue of irregular heartbeats, deposition excerpts of general causation expert, cardiologist Dr. Harris Lappin. *See* N. Courtney response to Uncontested Fact 10; and Opposition, Ex. B.

Plaintiffs argue that "Ms. [Narvelle] Courtney's claims are the exact adverse events that general causation experts in this matter have determined that Metabolife could cause," Opposition,

-18-

p. 2, and therefore that this evidence is sufficient to defeat summary judgment.  Again, Plaintiffs are incorrect.

Dr. Lappin testified that he had not reviewed any medical records from individual Plaintiffs in this matter and therefore could not render any opinions regarding specific causation.[13]  There is no claim that he in fact reviewed Ms. Courtney's medical history, and, as a result, Dr. Lappin's testimony does not create a genuine issue of material fact as to whether Metabolife 356 caused these conditions in this plaintiff.

For the reasons discussed earlier, Plaintiff's remaining evidence – Ms. Courtney's own declaration – is also insufficient to establish specific causation.  Indeed, Dr. Lappin's testimony demonstrates the wisdom of the rule that, as to a condition that is not within common knowledge, lay opinion testimony is not sufficient to establish causation.  *Pfiffner v. Correa,* 643 So.2d at 1234-35.  In the very deposition excerpts attached by the Plaintiff, Dr. Lappin explained that a patient often is unable to accurately identify something seemingly as simple as an irregular heart beat – heart palpitations, to use Dr. Lappin's terminology – much less to determine its cause.

Dr. Lappin explained that he has "had patients complain of palpitations that were absolutely nothing more than a normal heartbeat, a bit more vigorous from anxiety," while he has also "had other individuals tell me about palpitations that they didn't know what they were, and when we tracked them down, they were life-endangering."  Though Dr. Lappin advises that most palpitations "are something in between," he also advised that "[t]here's no way to tell in the vast majority of cases by history alone."  Lappin testimony, p. 214.  Plaintiff has failed to come forward with any

---

[13]    *See* the June 24, 2003 deposition of Harris A. Lappin, M.D. attached hereto as Exhibit "A," specifically: Page 97, Lines 2-5 and Page 169, Lines 4-11.

evidence to establish any link between the symptoms she suffered and her ingestion of Metabolife 356, and she has therefore failed to establish either a genuine issue of material fact so as to defeat summary judgment, or entitlement to the *Housley* presumption.

Further, although it is unclear, Plaintiff may claim that Metabolife 356 caused permanent heart arrhythmia, which she claims continuing even though her use of the product stopped. N. Courtney Opposition, p. 3. Plaintiff claims that Dr. Lappin's testimony establishes a genuine issue of material fact as to this issue. Plaintiff points to Dr. Lappin's testimony that "generally Metabolife can cause irregular heartbeats for an unsure time into the future." *Id.*, p. 3. Actually, however, that is not Dr. Lappin's testimony. In reality, Dr. Lappin testified that he could not determine "as a general thing" whether the effects of Metabolife would continue into the future. Lappin, p. 211. Rather, he "would have to look at the individual case" in order to be able to opine as to any causal link.

As shown, however, Dr. Lappin has testified that he has *not* reviewed the medical records of any individual Plaintiffs in this case and that he is unable to opine as to specific causation. therefore, Plaintiff has no medical evidence either confirming the existence of the conditions she alleges, or linking her particular symptoms to the use of Metabolife 356.

Further, because Ms. Courtney offers no expert medical testimony that would establish a "reasonable possibility" that her complaints are related to her ingestion of Metabolife 356, Ms. Courtney is not entitled to the *Housley* presumption. But there is an additional reason why the presumption is inapplicable as well – Ms. Courtney cannot establish that her symptoms occurred within a close temporal proximity to her ingestion of Metabolife's product.

Although it is difficult to determine from the evidence precisely when the onset of symptoms occurred, it appears from Ms. Courtney's Proof of Claim form that her complaints did not arise for at least a year *after* she started using the product.[14]  The Plaintiff is entitled to the *Housley* presumption only if she can establish a *close* temporal relationship "commencing *with* " the ingestion of Metabolife 356.  Even one year is far too distant from the initial "accident" to invoke *Housley*. See *Whiteman,* 688 So.2d at 211, and discussion, *supra*.

The undisputed facts in this matter establish that Ms. Narvelle Courtney is not able to meet her burden of proof on the issue of specific causation.  Metabolife, therefore, has carried its burden under Rule 56(c) to establish an absence of evidence on an issue as to which Plaintiff will bear the burden of proof at trial.  Ms. Courtney has failed to come forward with expert medical evidence linking the particular conditions she allegedly suffered to her consumption of Metabolife 356, and she has not established an entitlement to the *Housley* presumption or otherwise created a genuine issue of material fact sufficient to defeat summary judgment here.  For this reason, and the others discussed above, Metabolife's motion for summary judgment should be granted as to Narvelle Courtney.

---

[14] Ms. Courtney's September, 2002, Proof of Claim form states that she first purchased Metabolife 356 "about 3 years ago," *i.e.,* sometime in 1999, and that her injury began "about 2 years ago," *i.e.,* sometime in 2000.  See Ex. A to Metabolife's motion, Nos. 5 and 9.  If this is correct, then Ms. Courtney's symptoms did not occur until about one year *after* she began taking Metabolife 356.  On the other hand, Ms. Courtney's *declaration* states more specifically that she purchased Metabolife sometime in 1997.  Under this scenario, and still assuming her symptoms first occurred in 2000 (2 years before she completed the Proof of Claim form), her symptoms did not occur until *three* years after she began using Metabolife 356.  Either way, this is not the type of close temporal relationship required to invoke the *Housley* presumption.  Though as noted, Ms. Courtney states that she consulted Dr. David Harrison in connection with her symptoms, Plaintiffs did not attach those medical records.  According to her Proof of Claim, Ms. Courtney does not remember when she saw Dr. Harrison, and thus this event is of no help in establishing a more specific date as to her complaints.

Respectfully submitted:

GIEGER, LABORDE & LAPÉROUSE, L.L.C.

_____

ERNEST P. GIEGER, JR. (6154), T.A.
ANDREW A. BRAUN (3415)
JOHN E.W. BAAY II (22928)
JOSEPH E. LEE III (26968)
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana  70139-4800
Telephone:  (504) 561-0400
Facsimile:  (504) 561-1011
ATTORNEYS FOR METABOLIFE
  INTERNATIONAL, INC. and
  MICHAEL ELLIS

– and –

AKIN GUMP STRAUSS HAUER & FELD, LLP

DAVID A. JONES (Texas Nº 00795086)
THEODORE SCHULTZ (Texas Nº 00797393)
300 Convent Street, Suite 1500
San Antonio, Texas  78205
Telephone:  (210) 281-7000
Facsimile:  (210) 224-2035
ATTORNEYS FOR MICHAEL ELLIS

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing *Motion for Leave to File Metabolife's Reply to Plaintiffs' Opposition to Motions for Summary Judgment Regarding Carly A. Cinquemano, Narvelle Courtney, and Beverly Courtney,* and *Metabolife's Reply to Plaintiffs' Opposition to Motions for Summary Judgment Regarding Carly A. Cinquemano, Narvelle Courtney, and Beverly Courtney,* have been served upon:

Denise A. Vinet, Esq.
Vinet & Vinet
11817 Bricksome Avenue, Suite A
Baton Rouge, Louisiana 70816
          -- and --
Lewis O. Unglesby, Esq.
Unglesby Law Firm
246 Napoleon Street
Baton Rouge, Louisiana 70802
          -- and --
Peyton Patrick Murphy, Esq.
Murphy Law Firm
7035 Jefferson Highway
Baton Rouge, Louisiana 70806
          -- and --
Donna U. Grodner, Esq.
Grodner & Associates
2223 Quail Run, Suite B1
Baton Rouge, Louisiana 70808
          -- and --
Robert J. Snyder, Esq.
Post Office Box 340
Lutcher, Louisiana 70071-0340
          -- and –
Thomas Carey Wicker III
Capitelli & Wicker
1100 Poydras Street, Suite 2950
New Orleans, Louisiana 70163
Attorneys for PLAINTIFFS

Charles W. Schmidt, III, Esq.
Christovich & Kearney
Pan American Life Center
601 Poydras Street, Suite 2300
New Orleans, Louisiana 70130-6078
          -- and --
George P. Hebbler, Jr., Esq.
Thomas G. Milazzo, Esq.
Miranda, Warwick & Milazzo
2121 Airline Drive, Suite 601
Metairie, Louisiana 70001
Attorneys for ROYAL INSURANCE
COMPANY OF AMERICA

G. Benjamin Ward, Esq.
Phelps Dunbar
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Attorneys for AGRICULTURAL EXCESS &
SURPLUS INSURANCE

Robert E. Kerrigan, Jr., Esq.
J. Nicole Heyman, Esq.
Deutsch, Kerrigan & Stiles
755 Magazine Street
New Orleans, Louisiana 70130
Attorneys for INVESTORS INSURANCE
COMPANY and EVANSTON INSURANCE
COMPANY

W. Arthur Abercrombie, Jr., Esq.  
Phillip E. Foco, Esq.  
Taylor, Porter, Brooks & Phillips  
Post Office Box 2471  
Baton Rouge, Louisiana 70821-2471  
Attorneys for RLI INSURANCE COMPANY

Margaret M. Joffe, Esq.  
Deutsch, Kerrigan & Stiles  
755 Magazine Street  
New Orleans, Louisiana 70130  
Attorney for NATIONAL UNION FIRE  
INSURANCE  
COMPANY OF PITTSBURGH PA

by depositing same in the United States mail, postage prepaid and properly addressed this 18th day

of August, 2004.

JOHN E.W. BAAY II

-24-

1

1    UNITED STATES DISTRICT COURT

2    EASTERN DISTRICT OF LOUISIANA

3

4

5

6    SHIRLEY KEMP, ET AL          CIVIL ACTION
                                   NO. 00-3513
7
     VERSUS
8
     METABOLIFE INTERNATIONAL
9    INC,. ET AL

10

11

12                               **ORIGINAL**

13

14

15          Deposition of DR. HARRIS A.

16   LAPPIN, taken in the offices of Grodner &

17   Associates, 2223 Quail Run Drive, Suite

18   B-2, Baton Rouge, Louisiana 70808,

19   commencing at 10:24 a.m., on Tuesday, the

20   24th day of June, 2003.

21

22   REPORTED BY:

23        BROOK L. ALFONSO, RPR

24        REGISTERED PROFESSIONAL REPORTER

25

        CURREN & LANDRIEU COURT REPORTERS
        (504) 833-3330     (800) 487-3376


EXHIBIT
A

1      A      -- on this product.

2      Q      As part of your methodology, did

3  you review any medical records of any of

4  the individual plaintiffs?

5      A      No, sir.

6      Q      Did you review any of the reports

7  submitted by the defendant's experts?

8          MS. GRODNER:

9          What was the question again?

10          MR. BAAY:

11          If he reviewed any of the reports

12          that were rendered by the defendant's

13          experts.

14          MS. GRODNER:

15          In formulating his opinions?

16          MR. BAAY:

17          Yes.

18          THE WITNESS:

19          I'm not sure.  I'd have to know

20          which reports, because I read -- read

21          an awful lot of stuff.

22      Q      I understand.

23      A      And I'm not certain

24  necessarily -- I wasn't given, aside from

25  any own research, what Ms. Grodner and Mr.

1    that alone is compensable.

2  BY MR. BAAY:

3      Q    What --

4      A    I've not looked at any individual

5  cases on behalf of the attorneys who've

6  asked me to review this information, and

7  I'm not prepared to make a statement

8  regarding any of their clients at this

9  time, because I've not seen any of that

10 data.  I have reviewed information in a

11 scientific, dispassionate way.

12     Q    Okay.

13     A    And my conclusion is based upon

14 review of science, medical literature and

15 the opinions of experts, persons -- like

16 the editorials.  You don't get to write an

17 editorial because you're a nobody.  You

18 have to be a -- not an accomplished.  It's

19 a -- Everybody agrees that you're an expert

20 and you're asked to write opinions on these

21 products.  And we have multiple opinions,

22 editorials in this list of references.  And

23 there's more we can get.  This is not an

24 all-encompassing reference list.  We have

25 in these references other references.